**UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION**

| | |
|---|---|
| FRANCISCO JAVIER AVILA BERNAL and PEDRO LUIS AVILA BERNAL,<br><br>　　　　Plaintiffs,<br><br>vs.<br><br>MIKE COLEMAN and KIMBERLY COLEMAN,<br><br>　　　　Defendants. | ) ) ) ) ) ) ) ) ) Civil Action No. 1:18-cv-88-GNS ) ) ) ) ) ) ) ) |

**PLAINTIFF FRANCISCO AVILA BERNAL'S MEMORANDUM IN OPPOSITION TO DEFENDANT KIM COLEMAN'S MOTION FOR PARTIAL DISMISSAL**

Plaintiff Francisco Avila Bernal ("Mr. Bernal" or "Plaintiff"), by and through his undersigned counsel, hereby submits this Memorandum in Opposition to Defendant Kim Coleman's ("Defendant") Motion for Partial Dismissal (Dkt. No. 9-1).

**PRELIMINARY STATEMENT**

In her motion to dismiss Mr. Bernal's claim for outrageous conduct/ intentional infliction of emotional distress ("IIED"), Defendant both asserts a fundamentally flawed application of Kentucky law, and grossly mischaracterizes Plaintiff's Complaint ("Complaint") (Dkt. 1). Relying primarily on a 33-year-old case for the proposition that a party is limited to statutory remedies "where a 'statute both declares the unlawful act and specifies the civil remedy available,'" Def. Kim Coleman's Mem. in Supp. of Mot. for Partial Dismissal at 3-4 (Dkt. 9-1) (citing *Grzyb v. Evans*, 700 S.W.2d 399, 401 (Ky. 1985)), Defendant ignores recent controlling case law that narrows this holding to common law wrongful discharge claims where the only

1

asserted public policy basis for the discharge claim is the very statute that already provides a remedy for termination, such that the statute swallows up the common law claim. *Hill v. Kentucky Lottery Corp.*, 327 S.W.3d 412, 421 (Ky. 2010), *as modified on denial of reh'g* (Dec. 16, 2010). Viewed through this lens, Defendant's argument is inapplicable because Mr. Bernal has not brought a common law wrongful discharge claim and, beyond that, 42 U.S.C. § 1981 ("Section 1981") prohibits *race-based* discrimination, while Mr. Bernal's IIED claim has distinct legal elements that do not hinge on his Section 1981 claim but rather incorporate additional facts based on Mr. Bernal's limp. Simply put, Mr. Bernal's IIED claim "do[es] not arise from and do[es] not depend upon" his claim under Section 1981. *Id.* at 422.

Even assuming Defendant's reading of Kentucky law is correct, and that an IIED claim could be preempted by a Section 1981 claim where the underlying conduct was the same, Defendant's argument would fail because the underlying conduct Mr. Bernal complains of is distinct for each claim. To make her argument, Defendant mischaracterizes Plaintiff's Complaint by omitting critical portions of his allegations. But the Complaint makes clear that the Section 1981 claim is premised on Defendant's creation of a hostile work environment on account of Plaintiffs' race and ethnicity. Dkt. 1 at 20, ¶¶ 112- 26. By contrast, Mr. Bernal's IIED claim includes Defendant's separate and independent daily torment of him based on his limp. *Id.*, at 25, ¶ 147-50.

While Mr. Bernal might recover damages for Defendant's harassment of him based on his limp under Section 1981 based on the intersection of his race and disability, as discussed *infra* at Part C, given that the scope of Mr. Bernal's Section 1981 claim and damages has not yet been decided, and that prevailing on a Section 1981 intersectionality theory is not assured, dismissal of Mr. Bernal's IIED claim would be premature, possibly depriving him of recovery

for Defendant's treatment of him due to his limp. Thus, Mr. Bernal should be permitted to proceed with both claims. *See, e.g.*, *Haggard v. Martin*, No. CIV.A.3:01CV614-H, 2002 WL 753230, at *5 (W.D. Ky. Apr. 25, 2002) (allowing plaintiff to proceed with both an IIED and a discrimination claim, holding that, "[w]ith discovery in this action yet to commence and no proof yet adduced, it would be premature to dismiss Plaintiff's claim of outrageous conduct.").

## RELEVANT BACKGROUND

On July 12, 2018, Mr. Bernal and his brother, Mr. Pedro Avila Bernal, filed this lawsuit against Defendant and her husband, Mike Coleman, as a result of abuse and harassment they experienced while in the Defendants' employ as agricultural guestworkers under the federal H-2A program in 2016. Complaint, Dkt. 1. Defendant Mrs. Coleman was the Avila Bernals' supervisor and employer on the Colemans' tobacco farm in Kentucky. Dkt. 1, ¶¶ 12-16. In 2016, Defendants employed less than 15 employees. *Id.*, ¶ 61.

Among Plaintiffs' allegations are that Defendant Mrs. Coleman "terrorized the Avila Bernals and their co-workers by yelling insults at them based on their Hispanic ethnicity throughout the day as they worked, constantly threatening to send them back to Mexico or to have them blacklisted if they did not do what she demanded, and physically hitting and jabbing them with tobacco sticks around their legs and their buttocks while shouting and singing racial slurs." Dkt. 1 at 20, ¶ 115. Plaintiffs allege that these actions created a hostile work environment in violation of their rights under Section 1981. *Id.*, ¶¶ 114-16.

Separate and apart from these acts, Mr. Bernal alleges that Defendant specifically targeted him for abuse due to a limp he had incurred from an accident years prior. *Id.*, ¶¶ 5, 146-51. Specifically, Mr. Bernal alleges that Mrs. Coleman repeatedly and intentionally mocked him

3

by imitating his limp, laughed at him and called him disabled and worthless, and pushed or jabbed him while he tried to work. *Id.*, ¶¶ 94-96.

On September 14, 2018, in addition to filing her Answer, Dkt. 8, Defendant filed a motion for partial dismissal, seeking to dismiss Mr. Bernal's IIED claim. Dkt. 9-1. This motion should be denied for the reasons that follow.

## ARGUMENT

**A.** ***Grzyb* and its progeny do not preclude claims based on the same conduct, but rather on the same law.**

Defendant's motion hinges on the holding first articulated by the Kentucky Supreme Court in *Grzyb*, 700 S.W.2d at 401, that where "a statute both declares the unlawful act and specifies the civil remedy available to the aggrieved party, the aggrieved party is limited to the remedy provided by the statute." Dkt. 9-1 at 3-4. While pithy and succinct, the *Grzyb* holding does not stand for the proposition that a plaintiff cannot bring an IIED claim alongside a discrimination claim where the underlying conduct is the same, as Defendant suggests, and has no applicability here.

In *Grzyb*, the plaintiff, a terminable-at-will employee, alleged that he had been discharged from his employment for fraternizing with a female employee. 700 S.W.2d at 400. The plaintiff then brought a claim against his employer for common law wrongful discharge in violation of public policy based on sexual discrimination. *Id.* Because in Kentucky a terminable-at-will employee may be fired "for good cause, no cause, or for a cause that some might view as morally indefensible," the *Grzyb* court had to decide whether the plaintiff's termination fit within the "narrow public policy exception" to the terminable-at-will doctrine, applicable when the firing of an employee undermined a "most important public policy" that "must be evidenced by a constitutional or statutory provision." *Id.* at, 400–01 (citing *Firestone Textile Co. Div. v.*

*Meadows*, 666 S.W.2d 730, 731 (Ky. 1984)). Noting that the only statute articulating the "fundamental and well-defined public policy" against sex discrimination was KRS Chapter 344, a statute that "also provides the structure for pursuing a claim for discriminatory acts in contravention of its terms," the Court found it unnecessary to carve out an additional exception to general at-will employment on public policy grounds, because a statutory remedy already existed. *Id.* at 401. Thus, the Court's holding that where "a statute both declares the unlawful act and specifies the civil remedy available to the aggrieved party, the aggrieved party is limited to the remedy provided by the statute" spoke not to whether two overlapping claims could exist side-by-side, but rather to why the Court was bound to the established "limitations on 'any judicial exceptions to the employment-at-will doctrine.'" *Id.* at 401.[1]

While Defendant attempts to expand *Grzyb's* holding to mean that a common law claim must be dismissed when a civil rights claim is pleaded and plaintiff "seek[s] the same damages for the same conduct," Dkt. 9-1 at 1, the Kentucky Supreme Court in 2010 made clear that such an expansive reading is incorrect. *See Hill*, 327 S.W.3d at 421. Relying on *Grzyb*, the Court of Appeals in *Hill* had dismissed the plaintiffs' wrongful termination claim as preempted by the Kentucky Civil Rights Act ("KCRA") because "both claims arose out of the same set of facts and are predicated on the same conduct." *Id.* at 420 (internal quotation marks omitted). In reversing the Court of Appeals, the Kentucky Supreme Court referred to the Court of Appeals' reasoning as a "misunderstanding of *Grzyb* as it relates to the doctrine of preemption," and clarified that:

---

[1] As further evidence that the Court did not intend its ruling to extend beyond the context of at-will employment and wrongful discharge claims, the text of *Grzyb* makes no reference to a separate, alternative claim pleaded by plaintiff under KRS Chapter 344. To the contrary, the Court noted that, "As was the case with the claim of sex discrimination, this part of respondent's complaint also **lacked even a passing reference to any specific constitutional or statutory provisions** upon which Evans might base a claim." *Id.* at 401–02 (emphasis added). If plaintiff did not plead a separate claim under KRS Chapter 344, then the Court likely never contemplated its ruling being expanded to exclude *any* common law claim arising out of facts that also form the basis of a simultaneously pleaded statutory claim.

5

> *Grzyb* does not hold that preemption is triggered when the same set of facts that establishes a common law wrongful discharge claim also constitutes a claim under KRS Chapter 344. . . . The reason for the preemption [in *Grzyb*] was not that [plaintiff's] sex discrimination claim under KRS 344.040 was based on the *same conduct* as his common law wrongful discharge claim. Preemption was based on the fact that his sex discrimination claim was based on the *same law* as his wrongful discharge claim.

*Id.* at 420-22 (emphasis in original); *see also Goodwin v. Novartis Pharm. Corp.*, No. 3:11-CV-350-H, 2012 WL 1079086, at *5 (W.D. Ky. Mar. 30, 2012) ("Preemption occurs because the statutory and wrongful discharge claims are based on the same law, not because they rely on the same conduct.").

    To support her argument, Defendant cites two other cases, neither of which are Kentucky Supreme Court cases, and both of which pre-date *Hill* and rely on similar misunderstandings of *Grzyb*. Dkt. 9-1 at 1 (citing *Kroger Co. v. Buckley*, 113 S.W.3d 644 (Ky. Ct. App. 2003); *Puglise v. Regency Nursing, LLC,* No. CIV.A. 3:09-CV-457, 2009 WL 3079200, at *2 (W.D. Ky. Sept. 23, 2009)). To the extent these cases conflict with the holding in *Hill*, they should no longer be considered good law.

    When properly analyzed under *Hill*, it becomes clear that *Grzyb* and its progeny have no bearing on this case. Mr. Bernal's IIED and Section 1981 claims are premised on two distinct legal prohibitions: Section 1981 prohibits discrimination based on race, whereas Mr. Bernal's IIED claim has distinct legal elements that do not hinge on his Section 1981 claims but rather include Mr. Bernal's treatment due to his limp. Mr. Bernal's claims have none of the circular reasoning at play in *Grzyb* or its progeny; simply put, his IIED claims "do not arise from and do not depend upon" his Section 1981 race discrimination claim. *Hill*, 327 S.W.3d at 422. Defendant's flawed reading of *Gryzb* and other cases should be rejected, and her motion denied.

6

### B. Mr. Bernal's IIED and Section 1981 claims are premised on separate and independent conduct.

Even assuming that Defendant's read of Kentucky caselaw on preemption is correct, her motion would fail because the conduct complained of by Mr. Bernal under each claim is distinct.

In her motion to dismiss, Defendant argues that Plaintiff's IIED claim is "subsumed by his Section 1981 claim," because the IIED claim "'asserts the same behavior that is the basis for the statutory discrimination claims[.]'" Dkt. 9-1 at 4 (citing *Puglise v*, 2009 WL 3079200, at *2). To make this argument, Defendant excises crucial parts of Mr. Bernal's allegations to make it seem as though he is complaining of identical conduct in both claims. Using several ellipses in place of facts unique to each claim, she points to Mr. Bernal's allegations that Defendant yelled insults at him, threatened to send him back to Mexico, and physically hit and jabbed him with tobacco sticks under both claims. Dkt. 9-1 at 3.

While Defendant's conduct was similarly reprehensible under both claims, Mr. Bernal clearly identifies crucial differences that render the claims distinct. Under the Section 1981 claim, Plaintiffs allege that Defendant frequently yelled racial epithets at *all* the Mexican workers, including "stupid Mexicans," "worthless Mexicans," and "Mexicans full of shit." Dkt. 1, ¶¶ 4; 78. They also allege that Defendant hit and jabbed Mr. Bernal and his co-workers with tobacco sticks while singing a racist song: "Full of shit Mexicans, I'll stick you in the ass." *Id.*, ¶ 87. Mr. Bernal's IIED claims, on the other hand, specify that Defendant also singled him out for particular abuse based on his limp, including walking behind him, limping in an exaggerated manner and calling to his co-workers to laugh at how he walked, and calling him disabled and worthless. *Id.*, ¶¶ 5, 94. Plaintiffs' allegations, when looked at in total, rather than through Defendant's edited excerpts, evince two separate and distinct causes of action, such that the IIED claim should not be preempted by the Section 1981 claim.

As discussed above, Defendant cites to three cases for the premise that a plaintiff cannot bring an IIED claim for concurrently with a Section 1981 claim where both claims are premised on the same conduct and seek the same damages. As a threshold matter, none of these cases holds that an IIED claim is subsumed by a Section 1981 claim; rather, each discusses the overlap between a common law claim and the Kentucky Civil Rights Act ("KCRA"). *See Grzyb*, 700 S.W.2d at 401 (wrongful termination and KRS Chapter 344); *Kroger*, 113 S.W.3d at 645 (IIED and KCRA); *Puglise*, 2009 WL 3079200, at *2 (promissory estoppel and KCRA). However, even assuming that Kentucky courts would apply the preemption theory to a Section 1981 claim, and that Defendant's reading of the caselaw is correct, the cases are inapplicable because in each case, the underlying facts for each claim were *identical*. *See Grzyb*, 700 S.W.2d at 401 (plaintiff's wrongful termination claim premised on sex discrimination prohibited and actionable under the KCRA); *Kroger*, 113 S.W.3d at 647 (stating that "the facts upon which Buckley relied in support of her disability discrimination claim were the same facts relied upon in support of the common law claim"); *Puglise*, 2009 WL 3079200, at *2 (finding that "the promissory estoppel claim asserts the same behavior that is the basis for the statutory discrimination claims.").

Indeed, Kentucky caselaw dealing with preemption has made clear that the rationale behind a preemption rule is to avoid a kind of double recovery: where a plaintiff can recover emotional damages on a particular set of facts under the KCRA, she has no need for emotional damages under an IIED theory based on the same conduct. *See Banks v. Bosch Rexroth Corp.*, No. CIV.A. 5:12-345-DCR, 2014 WL 868118, at *4 (E.D. Ky. Mar. 5, 2014) (IIED claim "based on the same conduct that underlies" a plaintiff's KCRA claim is preempted because "plaintiff has an existing form of recovery[.]") (citing *McDonald's Corp. v. Ogborn,* 309 S.W.3d 274, 286 (Ky. Ct. App. 2009); *Childers v. Geile*, 367 S.W.3d 576, 582 (Ky. 2012) ("This is not to say that

8

[an IIED claim] cannot be pleaded alternatively, but there can be only one recovery on a given set of facts.").

But Mr. Bernal's claims make clear that there would be no risk of double recovery: his Section 1981 claim seeks damages for the harassment he endured on account of his race, while the IIED claim seeks additional damages for the torment he experienced as a result of Defendant's singling him out for abuse based on his limp. And because Section 1981 proscribes discrimination based on race (not disability), and the KCRA does not allow for claims of disability discrimination for employers with less than 15 employees, Ky. Rev. Stat. Ann. § 344.030, rather than eliminating double recovery, dismissing Mr. Bernal's IIED claim would in fact deprive him of his *sole* form of recovery for Defendant's abuse of Mr. Bernal based on his limp. Kentucky has expressly forbid such a result:

> [W]hile the legislative intent is clear that small employers should be exempt from application of KRS Chapter 344, nothing therein indicates an intention to completely absolve such employers from liability for discriminatory conduct which amounts to outrageous conduct or wrongful termination. Thus, we hold [plaintiff's] common law claims [including IIED] were not subsumed by KRS Chapter 344. . . . Under the facts of this case and the plain language of Kentucky law, foreclosure of [plaintiff's] statutory civil rights claims does not in any way foreclose the availability of remedies arising under her remaining common law claims. To hold otherwise would lead to the absurd result that an employer could completely escape liability for discriminatory work-related conduct by simply maintaining a work force of less than eight employees, thereby falling outside the statutory definition of an "employer" under KRS 344.030(2). This result would deny all similarly aggrieved parties any legal recourse. We cannot agree that this is the state of the law within the Commonwealth.

*Pucke v. J.A. Stevens Mower Co.,* 237 S.W.3d 564, 566 (Ky. Ct. App. 2007).

Because the complained-of conduct under the Section 1981 and IIED claims is premised upon different conduct, Defendant's argument fails.

9

**C.     Unless and until an intersectionality theory is found viable under 1981, dismissal of Mr. Bernal's IIED claim would be premature.**

Although Defendant does not raise this argument, there is a possibility that Mr. Bernal's Section 1981 claim *could* encompass the abuse he suffered at the hands of Defendant due to his perceived disability under an intersectionality theory. Under such a theory, a plaintiff can "maintain a claim for discrimination on the basis of a protected classification considered in combination with another factor." *Shazor v. Prof'l Transit Mgmt.*, 744 F.3d 948, 958 (6th Cir. 2014); *see also Hafford v. Seidner*, 183 F.3d 506, 515 (6th Cir.1999) (plaintiff could rely on evidence of religious harassment to buttress his claim for racial harassment, even though the religious harassment claim could not survive independently); *Navarro-Teran v. Embraer Aircraft Maint. Servs., Inc.*, 184 F. Supp. 3d 612, 624 (M.D. Tenn. 2016) (allowing plaintiff's allegations of harassment based on his perceived disability to proceed "to the extent that they show that the racial animus of his supervisors and co-workers was augmented by their bias against his perceived disability.").

In *Hafford*, the Sixth Circuit found that while the plaintiff had not demonstrated a triable issue over whether he was subjected to a hostile work environment based on his religion, the plaintiff could present evidence of bias against his religion at trial to show that it augmented his co-workers' racial animus towards him:

> We recognize that the overall harassment Hafford experienced may not have been based exclusively on his race but also on hostility to him as a "black Muslim." In at least one instance—Captain Darling's comment [that plaintiff's religion taught him to hate white people]—the link between the racial and religious bias was explicit. The theory of a hostile-environment claim is that the cumulative effect of ongoing harassment is abusive. It would not be right to require a judgment against Hafford if the sum of all of the harassment he experienced was abusive, but the incidents could be separated into several categories, with no one category containing enough incidents to amount to "pervasive" harassment.

10

> Although there is enough evidence of racial harassment for that claim to stand on its own, the district court should allow at trial for consideration of the possibility that the racial animus of Hafford's co-workers was augmented by their bias against his religion.

*Hafford*, 183 F.3d at 514–15.

Here, although Mr. Bernal is precluded from bringing a claim for discrimination based on a perceived disability under Section 1981 or the KCRA, he may be able to present evidence at trial that Defendant's bias against him due to a perceived disability augmented her racial animus against him. Indeed, as in *Hafford*, Mr. Bernal's allegations include a few instances where Defendant's hostility towards him based on both his race and disability appear intertwined, namely, her threats to send him back to Mexico if he reacted to her apery of his limp and her remarks that he was a "worthless, good-for-nothing Mexican," made while mocking his limp. Dkt. 1, ¶¶ 94, 96, 147.

If it were the case that Mr. Bernal was able to recover emotional damages under Section 1981 that incorporated Defendant's harassment of him based on his limp, Mr. Bernal understands that the Court may need to ensure that the IIED claim did not allow double recovery at trial. However, this theory is far from assured. And until it is tested and found viable, Mr. Bernal's IIED claim should remain in tact. Indeed, several courts interpreting Kentucky law have held that it would be premature to dismiss IIED claims before the statutory claims were deemed viable. *See Haggard*, 2002 WL 753230, at *5 (allowing plaintiff to pursue both IIED claim and discrimination claim on same facts, noting that "[w]ith discovery in this action yet to commence and no proof yet adduced, it would be premature to dismiss Plaintiff's claim of outrageous conduct"); *Buckley v. Kroger Co.*, No. 2006-CA-002244-MR, 2007 WL 4210675, at *3 (Ky. Ct. App. Nov. 30, 2007) (reinstating plaintiff's IIED claim after her KCRA claim was dismissed); *LaPorte v. B.L. Harbert Int'l, LLC*, No. 5:09-CV-219, 2010 WL 1542500, at *4 (W.D. Ky. Apr.

11

16, 2010) (allowing Plaintiff to maintain IIED claim where court had dismissed all KCRA claims against defendant).

## CONCLUSION

For the reasons set forth above, Mr. Bernal respectfully requests that Defendant's Motion for Partial Dismissal be denied in its entirety.

Respectfully submitted,

**/s/ Melia Amal Bouhabib**
Melia Amal Bouhabib
*Admitted Pro Hoc Vice*
SOUTHERN MIGRANT LEGAL SERVICES
A Project of Texas RioGrande Legal Aid, Inc.
311 Plus Park Blvd., Ste. 135
Nashville, TN 37217
Telephone: (615) 538-0725
Facsimile: (615) 366-3349
abouhabib@trla.org

**/s/ Laura E. Landenwich**
Laura E. Landenwich
Adams Landenwich Walton PLLC
517 W. Ormsby Ave.
Louisville, KY 40203
Telephone: (502) 561-0085
Facsimile: (502) 415-7505
Laura@justiceky.com

ATTORNEYS FOR PLAINTIFFS

## CERTIFICATE OF SERVICE

  I hereby certify that on this the 5th day of October, 2018, I electronically filed this document with the Clerk of Court using the ECF system, which sent notice of such filing to all counsel of record in this action.

               **/s/ Melia Amal Bouhabib**
               Melia Amal Bouhabib