UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION

| | |
|---|---|
| FRANCISCO JAVIER AVILA BERNAL and PEDRO LUIS AVILA BERNAL,<br><br>　　　　Plaintiffs,<br><br>vs.<br><br>MIKE COLEMAN and KIMBERLY COLEMAN,<br><br>　　　　Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) Civil Action No. 1:18-cv-88-GNS<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

### PLAINTIFF FRANCISCO AVILA BERNAL'S SURREPLY IN OPPOSITION TO DEFENDANT KIMBERLY COLEMAN'S MOTION FOR PARTIAL DISMISSAL

In Defendant Kimberly Coleman's Reply in Further Support of her Memorandum in Support of her Motion for Partial Dismissal ("Reply") (Dkt. 11), Defendant argues for the first time that Plaintiff Francisco Avila Bernal's ("Mr. Bernal") allegations in support of his claim for intentional infliction of emotional distress ("IIED") "do not rise to the level of outrageous and 'utterly intolerable' conduct required under Kentucky law." Dkt. 11 at 3. Ignoring the detailed allegations in Mr. Bernal's Complaint, Defendant incorrectly characterizes Mr. Bernal's opposition to her motion to dismiss as limiting his IIED claim to one in which Defendant simply "mocked him for what she perceived to be a disability – namely [Mr. Bernal's] limp," and argues that mockery alone is not sufficient to maintain an IIED claim. *Id.* at 3 (internal citations omitted). To support this new argument, Defendant excises crucial parts of Mr. Bernal's allegations and relies on inapposite caselaw. When considered in full, Mr. Bernal's allegations

1

more than satisfy the IIED standard at the motion to dismiss stage, and he should be permitted to proceed to discovery. Defendant's newest argument should be rejected and her motion denied.

### A. Legal Standard

As Defendant noted, when considering a motion to dismiss for failure to state a claim under Federal Rule 12(b)(6), the Court must accept every well-pleaded allegation of Plaintiff's Complaint and construe the Complaint in the light most favorable to Plaintiff. *See* Dkt. 9-1 at 3 (citing *Lambert v. Hartman,* 517 F.3d 433, 439 (6th Cir. 2008)). This standard is "very high; the Court must accept all of Plaintiff's allegations as true and Defendant must show that 'no set of facts' that the Plaintiff can prove would entitle Plaintiff to the relief requested." *Grego v. Meijer, Inc.*, 187 F. Supp. 2d 689, 694–95 (W.D. Ky. 2001) (citing *Conley v. Gibson,* 355 U.S. 41, 45–46 (1957)); *see also Mills v. EquiCredit Corp.*, 172 F. App'x 652, 654 (6th Cir. 2006) ("A complaint may be dismissed only if 'it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.'") (internal citations omitted).

Under Kentucky law, "[a] prima facie case of [IIED] requires that Plaintiff show: (1) that the wrongdoer's conduct was intentional or reckless; (2) that the conduct was outrageous and intolerable and offends against the generally accepted standards of decency and morality; (3) a causal connection between the wrongdoer's conduct and the emotional distress; and (4) that the emotional distress was severe." *LaPorte v. B.L. Harbert Int'l, LLC,* No. 5:09-CV-219, 2010 WL 1542500, at *4 (W.D. Ky. Apr. 16, 2010).

Applying these standards to IIED claims, federal district courts in Kentucky have routinely allowed a plaintiff to proceed to discovery on an IIED claim where "it does not appear beyond doubt that there are no facts that [could] support [plaintiff's] allegation that [defendant's] conduct was outrageous." *Crook v. Conway Transportation Servs., Inc.*, No. CV 08-173-GFVT,

2008 WL 11344855, at *3 (E.D. Ky. Oct. 30, 2008) (noting that the standard for outrageousness is high, but nevertheless denying the motion to dismiss plaintiff's IIED claim because "at this stage in the proceeding the Court accepts the facts presented by Crook as true and views the complaint in the light most favorable to him. Under this standard, it does not appear beyond doubt that there are no facts that can support Crook's allegation that Conway's conduct was outrageous."); *see also Tucker v. Heaton*, No. 5:14-CV-00183-TBR, 2015 WL 3935883, at *13 (W.D. Ky. June 26, 2015) (although the Court was skeptical the IIED claims could survive a motion for summary judgment, "given the liberal standard applied at the motion to dismiss phase, the Court will allow Tucker's [IIED] claim to proceed through the discovery process"); *Marshall*, 2014 WL 4542426 at *3–4 (denying motion to dismiss IIED claim where plaintiff alleged that she "was harassed upon her return to work, and that she was assured she would not lose her job just one day before she was fired . . . [and] that she suffered embarrassment and humiliation," and noting that, "As this is a motion to dismiss, the Court will allow the Plaintiff's claim of IIED to go forward at this time."); *LaPorte*, 2010 WL 1542500, at *4 (allegations that defendant's actions were intentional and caused Plaintiff severe emotional distress, that there was a pattern of discrimination and harassment, including racial and derogatory comments from a supervisor which was "'so pervasive' as to disrupt Plaintiff's work conditions and cause him severe distress," and that plaintiff suffered embarrassment and humiliation were "enough to survive a motion to dismiss."); *Long v. Hoffman Enclosures, Inc.,* No. CIV.A. 5:08-100-KKC, 2008 WL 2548640, at *3–4 (E.D. Ky. June 23, 2008) (noting that while the Court could not conclude that plaintiff's allegations that defendant taunted and harassed plaintiff in front of other employees based on his speech impediment and crippled arm "constitute IIED as a matter of law,

3

if such conduct occurred, there is at least a reasonable basis for believing that [defendant] might be liable for IIED under Kentucky law.").

### B. The Pleaded Facts are Sufficient to Survive Defendant's Motion to Dismiss

Faced with the liberal standard at the motion to dismiss phase, Defendant attempts to reduce Mr. Bernal's IIED claim to a sliver by arguing that he complains only that Defendant mocked him due to his limp. Dkt. 11 at 3-5. However, neither the Complaint nor Mr. Bernal's opposition to Defendant's motion to dismiss limits Mr. Bernal's claims to one of mere mockery. Mr. Bernal's opposition merely indicated that his IIED claim arises from "the torment he experienced as a result of Defendant's singling him out for abuse based on his limp," as opposed to his Section 1981 claim, which, primarily, seeks "damages for the harassment he endured on account of his race." Dkt. 10 at 9. Far from stripping his IIED claims to a bare minimum, Mr. Bernal's opposition reiterates the Complaint's allegations that "Defendant yelled insults at him, threatened to send him back to Mexico, and physically hit and jabbed him with tobacco sticks under both [the IIED and the Section 1981] claims." *Id.* at 7.

Moreover, the Complaint is replete with allegations that go far beyond the "the alleged mocking of a limp." Dkt. 11 at 4. In support of his IIED claim, Mr. Bernal alleges the following:

> While [Mr. Bernal] worked, Defendant would walk behind him, limping dramatically and squinting her eyes, saying things such as, "Look, look, everybody, look at how he walks!" and calling him a "worthless, good-for-nothing Mexican." Dkt. 1, ¶ 94.

> In addition to the mocking, Kim would physically push Francisco while he worked, all while berating and insulting him. Kim would stand beside him as he worked, jab him with a tobacco stick, and yell curse words and denigrating remarks at him. If he turned his head towards her, she would yell, "Work faster or I'll send you back to Mexico!" or would call him a worthless Mexican. *Id.*, ¶ 95.

> The constant mocking of his limp and the racially-charged disparagement

4

and physical assaults traumatized Francisco and affected his ability to concentrate at work. He felt anxious and physically afraid that she would hit him, as he tried to do his work. Francisco came to dread going to work, and he feared what Kim would do to him each day. *Id.*, ¶ 98.

Many nights, Francisco would return to the worker housing despondent over Kim's offensive treatment and wanting to go home to Mexico, but his debt and Kim's threats that she would have him barred from entering the United States again prevented him from leaving. He felt as though he must endure the abusive conditions in order to repay the debts he had accrued to get to the Colemans' farm and to avoid being blacklisted. Given her abuse of him at work, he was also afraid that if he left, she would find him and hurt him. Having to endure her abuse made him feel powerless, humiliated, and anxious. *Id.*, ¶ 99.

Kim intentionally caused Francisco severe emotional distress when she repeatedly mocked him for what she perceived to be a disability—namely, his limp. Kim followed Francisco while he was trying to work, limping in an exaggerated manner and laughing while she made fun of him or called him names such as worthless and disabled. If Francisco looked at her while she did this, she yelled at him to keep working and threatened to fire him or send him back to Mexico. *Id.*, ¶147.

Kim's unrelenting torment of Francisco directly caused him to suffer extreme emotional distress; it interfered with his ability to concentrate at work; and it made him feel powerless, humiliated, and anxious. Moreover, Francisco was in fact powerless to stop her, as she constantly held the threats of firing him, blacklisting him, and having him sent back to Mexico over his head. *Id.*, ¶ 149.

As a direct and proximate result of Kim's torment, Francisco suffered substantial injuries and damages, including humiliation, anxiety, indignity, panic, embarrassment, and depression. *Id.*, ¶ 150.

When given proper consideration, Mr. Bernal's allegations easily meet all of the elements for IIED under Kentucky law at the motion to dismiss stage: in support of the first element, that "the wrongdoer's conduct was intentional or reckless," *LaPorte,* 2010 WL 1542500 at *4, *supra* at 3-4, Mr. Bernal alleges that "Kim intentionally caused Francisco severe emotional distress" when she repeatedly mocked him, threatened him, and physically pushed him and jabbed him with tobacco sticks. " Dkt. 1, ¶¶147, 94, 95. In support of elements two through four ("(2) that

the conduct was outrageous and intolerable and offends against the generally accepted standards of decency and morality; (3) a causal connection between the wrongdoer's conduct and the emotional distress; and (4) that the emotional distress was severe," *id.*), Mr. Bernal alleges that: Defendant "traumatized [Mr. Bernal] and affected his ability to concentrate at work. He felt anxious and physically afraid that she would hit him…", Dkt. 1, ¶98; he was "despondent over Kim's offensive treatment, " "afraid," and "[h]aving to endure her abuse made him feel powerless, humiliated, and anxious," *id.* at ¶99; Defendant's "unrelenting torment of [Mr, Bernal] directly caused him to suffer extreme emotional distress; it interfered with his ability to concentrate at work; and it made him feel powerless, humiliated, and anxious," *id.* at ¶149; and "[a]s a direct and proximate result of Kim's torment, Francisco suffered substantial injuries and damages, including humiliation, anxiety, indignity, panic, embarrassment, and depression", *id.* at ¶150. As discussed above, federal district courts in Kentucky have frequently allowed a plaintiff to proceed to discovery on an IIED claim pleaded with similar or much less specificity than what Mr. Bernal has alleged here. *See supra* at 2-4 (citing *Tucker*, 2015 WL 3935883, at *13; *Marshall*, 2014 WL 4542426 at *3–4; *LaPorte*, 2010 WL 1542500, at *4; *Crook*, 2008 WL 11344855, at *3; *Long*, 2008 WL 2548640, at *3–4).

    The one case that Defendant relies upon to support her argument is wholly inapposite. *See* Dkt. 11 at 4 (discussing *Monak v. Ford Motor Co.*, 95 Fed. Appx. 758, 760 (6th Cir. 2004)). *Monak* dealt with review of a grant of summary judgment under Ohio state law claims of IIED, gender and disability discrimination and harassment, after the close of discovery and significant evidence had been adduced. *Id.* at 760-61, 764, 766-67. As this is a motion to dismiss, "[s]ummary judgment standards do not apply[.]" *Sprowls v. Oakwood Mobile Homes, Inc.*, 119 F. Supp. 2d 694, 697 (W.D. Ky. 2000) (finding that plaintiff had successfully alleged an IIED

6

claim and noting that, "[w]hile [the complained of] behavior may be dismissed as juvenile or merely insulting by some, it would be unfairly presumptuous for this Court to conclude these facts and those developed through discovery support *no* reasonable basis for Sprowl's claim that this behavior offends generally accepted standards of morality or decency."); *see also Grego v. Meijer, Inc.*, 187 F. Supp. 2d 689, 694–95 (W.D. Ky. 2001) (declining to dismiss plaintiff's IIED claim, noting, "[a]t this preliminary stage, this Court cannot confidently say that no set of facts alleged by the Plaintiff would support a successful outrage claim under Kentucky law.").

## CONCLUSION

For all of the foregoing reasons, Defendant's new argument regarding the insufficiency of Mr. Bernal's IIED allegations should be rejected, and Defendant's motion for partial dismissal denied.

Respectfully submitted,

**/s/ Melia Amal Bouhabib**
Melia Amal Bouhabib
*Admitted Pro Hoc Vice*
SOUTHERN MIGRANT LEGAL SERVICES
A Project of Texas RioGrande Legal Aid, Inc.
311 Plus Park Blvd., Ste. 135
Nashville, TN 37217
Telephone: (615) 538-0725
Facsimile: (615) 366-3349
abouhabib@trla.org

**/s/ Laura E. Landenwich**
Laura E. Landenwich
Adams Landenwich Walton PLLC
517 W. Ormsby Ave.
Louisville, KY 40203
Telephone: (502) 561-0085
Facsimile: (502) 415-7505
Laura@justiceky.com

ATTORNEYS FOR PLAINTIFFS

## CERTIFICATE OF SERVICE

      I hereby certify that on this the 26th day of October, 2018, I electronically filed this document with the Clerk of Court using the ECF system, which sent notice of such filing to all counsel of record in this action.

                                        **/s/ Melia Amal Bouhabib**
                                        Melia Amal Bouhabib