UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CIVIL ACTION NO. 1:18-CV-00088-GNS

FRANCISCO JAVIER AVILA BERNAL
and PEDRO LUIS AVILA BERNAL                                             PLAINTIFFS

VS.

MIKE COLEMAN and
KIMBERLY COLEMAN                                                        DEFENDANTS

## FINDINGS OF FACT, CONCLUSIONS OF LAW
## AND RECOMMENDATION

Before the Court is Defendants' ("the Colemans") Motion for Partial Dismissal (DN 9). Plaintiffs ("the Bernals") filed a response in opposition (DN 10). The Colemans filed a reply (DN 11). By order entered on March 8, 2019 (DN 22), this matter was referred to the undersigned United States Magistrate Judge for findings of fact and recommendations. This matter is ripe for determination.

### Findings of Fact

The Bernals are former employees of the Colemans brought to work on their tobacco farm under the federal H-2A visa program to perform agricultural work. This lawsuit arises from alleged actions of the Colemans involving that employment. The Bernals allege field supervisor Kimberly Coleman regularly used racial epithets to insult the them. She allegedly threatened to "send the workers back to Mexico" and "blacklist" them from future participation in the H2A visa program if they complained about work conditions or didn't meet specific work-related demands. The Bernals further allege that Coleman struck them and other workers with tobacco sticks as they worked (DN 1 PageID # 14).

1

In a separate claim, Francisco Bernal alleges that Kimberly Coleman targeted him specifically. Francisco walks with a limp from injuries sustained from an accident in his youth. He alleges Kimberly Coleman mocked him for his limp, including imitating his walk, calling attention to his injuries to others, and calling him a "worthless good for nothing Mexican" (DN 1 PageID # 16). Francisco continued to work because he believed if he complained or left he would be barred from future work in the United States.

Pursuant to these allegations, the Bernals filed claims for violation of their Civil Rights guaranteed by 42 U.S.C. §1981 and common law intentional infliction of emotional distress, among others (DN 1). The Colemans responded by filing this motion to dismiss the intentional infliction of emotional distress (IIED) claim due to failure to state a claim upon which relief can be granted (DN 9). *See* Fed R. Civ. P. 12(b)(6).

## Conclusions of Law

"A motion to dismiss for failure to state a claim is a test of the plaintiff's cause of action as stated in the complaint, not a challenge to the plaintiff's factual allegations." Golden v. City of Columbus, 404 F. 3d 950, 958-59 (6th Cir. 2005). When reviewing a 12(b)(6) motion to dismiss, the Court must construe the complaint in the light most favorable to the plaintiff and consider whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Lambert v. Hartman, 517 F. 3d 433, 439 (6th Cir. 2008).

The Colemans argue that the Bernal's IIED claim is subsumed by their §1981 claim (DN 8 PageID # 90). It is their contention that where "a statute both declares the unlawful act and specifies the civil the remedy available to the aggrieved party, the aggrieved party is limited to the remedy provided by the statute." *citing* Grzyb v. Evans, 700 S.W. 2d 399, 401 (Ky. 1985). In

other words, because the IIED claim and statutory discrimination claim are based on the same behavior, the common law IIED claim should be dismissed.

Kentucky employment law adheres to the terminable-at-will doctrine—that any employer may discharge his employee for good cause, no cause, or for a cause that some might view as morally indefensible. Production Oil Co. v. Johnson, 313 S.W. 2d 411 (Ky. 1958); *See also* Firestone Textile Co. Div. v. Meadows, 666 S.W. 2d 730, 731 (Ky. 1984). Over time, the Kentucky Supreme Court has adopted narrow exceptions to this policy when the firing of an employee undermined an important public policy. Firestone, 666 S.W. 2d at 731 (employer fired employee for seeking worker's compensation); Pari-Mutuel Clerk's Union v. Kentucky Jockey Club, 551 S.W. 2d 801 (Ky. 1977) (employee fired for engaging in lawful union activity). These exceptions are appropriate when: 1) This discharge is contrary to a fundamental and well-defined public policy as evidenced by existing law; 2) That policy is evidenced by a constitutional or statutory provision; 3) The decision of whether the public policy asserted meets these criteria is a question of law for the court to decide, not a question of fact. Firestone, 666 S.W. 2d at 731.

A year after deciding Firestone, the Court clarified their holding with Grzyb v. Evans, 700 S.W. 2d 399, 401 (Ky. 1985). In Grzyb, an employee alleged that he was discharged for fraternizing with a female employee who was not fired for the same conduct. He sued his former employer asserting claims for violation of his civil right under KRS 344.040 and common law wrongful discharge in violation of public policy—both based on sexual discrimination. The Kentucky Supreme Court held that the common law claim was preempted by the statutory remedies provided by KRS Chapter 344. The Colemans seek the same result here, arguing the IIED claim should be preempted by the §1981 claim because they are based on the same conduct.

The Kentucky Supreme Court has made clear this is not what Grzyb stands for. "The reason for the preemption, however, was not that [plaintiff's] sex discrimination claim under KRS 344.040 was based on the *same conduct* as his common law wrongful discharge claim. Preemption was based on the fact that his sex discrimination claim was based on the *same law* as his wrongful discharge claim." Hill v. Ky. Lottery Corp., 327 S.W. 3d 412, 421 (Ky. 2010) (emphasis original). In Gryzb, the fundamental and well-defined public policy supporting the common law wrongful discharge claim was the same policy articulated in KRS Chapter 344. "Thus, the same statute which would provide the necessary underpinning for a wrongful discharge suit where there is sufficient evidence to prove sex discrimination in employment practices also structures the remedy. The statute not only creates the public policy but preempts the field of its application." Hill, 327 S.W.3d at 421 (quoting Grzyb, 700 S.W.2d at 401). Hill explained that preemption is not caused by the similarity of facts underlying the causes of action. Preemption of the common law claim by the statutory claim is appropriate when the statute enunciates the public policy and provides the structure for pursuing a claim.

Unlike the plaintiffs in Gryzb and Hill, the Bernals are not pursuing a wrongful termination claim. However, Hill's reasoning remains applicable. When "the statute both declares the unlawful act and specifies the civil remedies available to the aggrieved party, the aggrieved party is limited to the remedy provided by the statute." Hill, 327 S.W. 3d at 421. Those circumstances are not present in this case. The Bernals are pursuing a §1981 federal civil rights claim and a Kentucky common law intentional infliction of emotional distress claim, among others. §1981 is a federal statue that expresses a public policy prohibiting discrimination based on race. By contrast, IIED is a state common law right that expresses a much broader public policy forbidding conduct that causes severe emotional distress to another. Certainly, there may be some overlap

4

between these two policies because the acts of racial discrimination may cause severe emotional distress. But §1981 is not intended to provide the structure for pursuing an IIED claim. Furthermore, §1981 requires a factual showing of racial discrimination. IIED requires a factual showing of intentional or reckless extreme and outrageous conduct causing severe emotional distress to another. Childers v. Geile, 367 S.W. 3d 576, 578-79 (Ky. 2012). The Bernal's IIED claim is not derivative of their §1981 race discrimination claim. The two require proof of separate factual elements and contemplate different remedies. Furthermore, the IIED claim is not premised solely on Coleman's alleged racial discrimination, but independent conduct such as striking workers with sticks and mocking Francisco Bernal's limp (DN 1 PageID # 25).

The rationale underscoring Kentucky preemption law is to avoid double recovery. If a plaintiff can recover emotional damages under the Kentucky Civil Rights Act (KCRA), an IIED claim becomes redundant. See Childers, 367 S.W. 3d at 582. However, that risk is not present here because of the additional facts alleged beyond racial discrimination underscoring the IIED claim. §1981 does not provide a cause of action based on disability discrimination. KCRA does not allow for claims of disability discrimination against employers with less than 15 employees. Therefore, the risk is not that Bernal will recover double, but dismissing the IIED claim will bar any recovery for the alleged disability discrimination. Kentucky courts have prohibited such an outcome. Pucke v. J.A. Stevens Mover Co., 237 S.W. 3d 564, 566 (Ky. Ct. App. 2007).

In rebuttal, the Colemans argue that the IIED claim is not supported by sufficient factual allegations and should be dismissed (DN 11 PageID # 109). However, the argument erroneously narrows the relevant facts to Ms. Coleman's alleged mocking of Francisco's disability. While the Complaint focuses on that behavior, it explicitly incorporates by reference other conduct such as striking workers with a stick, using racial slurs, failing to pay minimum wages, and charging at

workers in a truck (DN 1 PageID #25). The Court must construe the complaint in the light most favorable to the plaintiff and consider whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009); <u>Lambert v. Hartman</u>, 517 F. 3d 433, 439 (6th Cir. 2008). It would be inappropriate to dismiss the IIED claim for insufficient factual allegations at this stage.

Recommendation

**WHEREFORE**, it is recommended that Defendant's Motion for Partial Dismissal, DN 9, be **DENIED**.

June 14, 2019

**H. Brent Brennenstuhl**
**United States Magistrate Judge**

NOTICE

Therefore, under the provisions of 28 U.S.C. §§ 636(b)(1)(B) and (C) and Fed.R.Civ.P. 72(b), the Magistrate Judge files these findings and recommendations with the Court and a copy shall forthwith be electronically transmitted or mailed to all parties. Within fourteen (14) days after being served with a copy, any party may serve and file written objections to such findings and recommendations as provided by the Court. If a party has objections, such objections must be timely filed or further appeal is waived. Thomas v. Arn, 728 F.2d 813 (6th Cir.), aff'd, 474 U.S. 140 (1984).

June 14, 2019

**H. Brent Brennenstuhl**
**United States Magistrate Judge**

Copies:  Counsel